C. A. SMITH LUMBER COMPANY and Another v. CENTRAL MANU-FACTURERS' MUTUAL INSURANCE COMPANY.[1]

April 26, 1897.

Nos. 10,263—(18).

**Trial—Instruction—Effect of Evidence.**
New trial ordered for the reason that the court instructed the jury incorrectly as to the effect of the evidence.

Appeal by plaintiffs from an order of the district court for Hennepin county, Smith J., denying a motion for a new trial, after a verdict for defendant. Reversed.

*A. Ueland* and *Kitchel, Cohen & Shaw*, for appellants.
*Koon, Whelan & Bennett*, for respondent.

MITCHELL, J. This action was brought on a fire insurance policy, and the sole defense was that the policy had been canceled by the mutual agreement of the parties before the loss occurred, which was on the night of December 10, 1894.

The plaintiff had been insured to the amount of $12,000 by this and other policies in companies represented by the Shove Agency. The policies contained a provision that they should be canceled at any time at the request of the insured, or by the insurers, by giving five days' notice. The plaintiffs, having made some additions to the buildings covered by the policies, requested the agent of the companies to place $4,500 additional insurance on the property. This the agent refused to do, and, being for some reason dissatisfied with the risk, on

[1] Reported in 70 N. W. 866.

December 6, 1894, served notice on the plaintiffs that the existing policies would all be canceled on December 11.

Upon the evidence, the case turned entirely upon the question whether the understanding and agreement between plaintiffs' agent, Springer, and the defendant's agent, Danforth, at their interview on the afternoon of December 10, was that the policy should be canceled immediately, on that day, or not until the next day, when the five days' notice would expire. This was to be determined from what was done and said between Danforth and Springer, and not from the mere intention of either, not known or disclosed to the other. It is unnecessary to refer to the testimony as to what occurred at this interview, except to say that standing by itself, or even when considered in the light of what had previously occurred between the parties, it was not conclusive, so as to require a verdict for either party, but made a case for the jury.

For the alleged purpose of showing that Springer's intention was to have the policies canceled immediately, on December 10, without waiting until the five days' notice expired on the 11th, the defendant introduced evidence tending to show that, about noon of December 10, Springer made a verbal agreement with another insurance agent, named Belknap, for $16,500 insurance on the same property, to take effect at noon of that day. To the same point, and for the same purpose, defendant introduced the evidence of Belknap, who testified fully as to what occurred between him and Springer as to placing the insurance. The testimony of this witness was evidently intended to prove, not merely that Springer had negotiations with him with reference to placing the insurance, but also that a completed and valid verbal contract of insurance, taking effect at noon of December 10, was entered into. It was clearly with that view that the witness was asked as to the custom of placing insurance in that way without issuing policies.

It came out in the cross-examination of this witness that after the fire all of the companies with which this insurance was claimed to have been placed by or through Belknap paid their proportionate share of the loss, but on the basis that the $12,000 insurance in the Shove Agency was still in force as concurrent insurance. All we need say as to the effect of this evidence is that in our opinion it did

not conclusively show a valid and completed contract of insurance for $16,500, taking effect on December 10.   The court instructed the jury that this evidence

"was also permitted to go in as a circumstance to guide your minds as to whether or not the claim of the plaintiffs or the defendant is correct as to the cancellation of this policy and other policies on the afternoon of December 10."

The court further instructed the jury that

"there is no evidence to show that that insurance [the $16,500 alleged to have been placed with Belknap] was not a valid insurance upon that property.   It was recognized by all the companies as such after the property was destroyed by fire."

Also, that "the evidence shows that it was completed on that day" (December 10).

It will be observed that stress was laid in the evidence, emphasized by the charge of the court, on the fact, not merely that Springer had been negotiating for other insurance, or even that he supposed he had obtained it, but that he had in fact actually secured it as of the date of noon of December 10.   It is not apparent how some of this evidence was competent upon the question of what the mutual agreement and understanding was between Springer and Danforth as to the date when the policy in suit was to be canceled.   But it was all introduced by the defendant as bearing upon that issue, and the probable effect of it upon the jury is very apparent.   And although it may have been incompetent, and most of it was introduced without objection, it was none the less error to instruct the jury incorrectly as to the effect of it, in a way calculated to prejudice the plaintiffs.   The court, in effect, instructed the jury that the plaintiffs had secured new insurance, valid in law, to the amount of $16,500, on the same property.   This, as we have already said, overstated the effect of the evidence; and that this consideration might have greatly influenced the jury is almost self-evident.

This error was prejudicial, unless the other evidence conclusively proved that the agreement of the parties was that the policy was to be canceled on December 10, which,—as already stated,—in our opinion, it was not.

Order reversed and new trial granted.